**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTIONS** |
| vs. | ) | |
| | ) | Case No. 4:06-cr-043 |
| Gordon D. Rettinger, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court are seven motions filed by the Defendant. On October 5, 2006, the Defendant filed: (1) Motion to Dismiss for Failure to Provide Exculpatory Evidence, (2) Motion to Dismiss for Loss or Destruction of Evidence, and (3) Motion for Hearing on the Motions. On October 20, 2006, the Defendant filed: (4) Motion to Dismiss for Outrageous Government Conduct, (5) Motion for Hearing on Motion to Dismiss for Outrageous Government Conduct, and (6) Motion for a Bill of Particulars. On October 23, 2006, the Defendant filed a seventh motion entitled Motion to Take Deposition of Wayne Thomas. For the reasons outlined below, the motions are denied.

**I.   BACKGROUND**

The defendant, Gordon D. Rettinger (Rettinger), is charged by indictment with stalking in violation of 18 U.S.C. 2261A(1). See Docket No. 2. Rettinger was arrested on June 12, 2006, and was transported to Rollette County Jail. See Docket No. 37. At his request, Rettinger's car was towed to a parking lot at the Rolette County Jail. See Docket Nos. 36-2, 36-5. Rettinger asserts that his car contained a card from the victim's aunt and that the card was missing when he retrieved the

car.  See Docket No. 31-1.  Prior to the disappearance of the card, Rettinger had made a photocopy of the card and has possession of that.  See Docket 31-6.

Since his arrest, Rettinger has been furnished with discovery that includes surveillance logs from the Sky Dancer Casino, the victim's place of employment, from May 11-17, 2006.  See Docket No. 31.  The surveillance logs reflect that Rettinger was at the casino several times during the May 11-17 time frame.  The surveillance logs also contains security officers' observations of Rettinger's activities while at the casino.  See Docket No. 31-2.  The casino has surveillance cameras located in and around the casino, however, no casino camera surveillance recordings have been collected or preserved.

On May 18, 2006, FBI Special Agent Bennett and Bureau of Indian Affairs (BIA) Special Agent Thomas requested recordings of Rettinger's activities at the casino from gaming investigator Larraine Laverdure.  See Docket No. 36-3.  Laverdure advised them that there were no recordings of Rettinger's activities.  See Docket No. 36-3.  On October 10, 2006, after the motion to dismiss for loss or destruction of exculpatory evidence was filed, the agents followed up with Laverdure concerning their request for recordings on May 18, 2006.  The agents learned that Laverdure had misinterpreted their request as one for hard copies (CDs) that had already been made, of which there were none, and not as a request that the casino's temporary video files be saved as hard copies that could then be turned over to the agents.  The agents contend that they understood Laverdure's statement on May 18, 2006, that there were no recordings of Rettinger's activities, to mean that they could not retrieve any of the prior activity, and therefore no further request for the casino surveillance videos was made.  Because no request was made to have the temporary recordings saved onto a CD, the casino recorded over the surveillance recordings in accordance with its

2

standard procedure - the memory capacity of the surveillance recording in the computer system is 14 days and after that time the recorded material is overwritten. See Docket No. 36-3. The Government contends that the casino surveillance recordings, if available, would have been inculpatory rather than exculpatory. See Docket No. 37.

On June 21, 2006, Agent Bennett interviewed Louann St. Claire. The Government has prepared an interview report and provided that report to the defendant while discovery was ongoing, and with two months remaining until trial. See Docket No. 35. Rettinger contends that the Government failed to timely provide him with Agent Bennett's interview of Louann St. Claire. Rettinger further contends that Agent Bennett failed to interview Steven Lee Sedler, another witness with alleged exculpatory information.

At some time during the Government's investigation, Agent Bennett also interviewed Denise Hanson and Rodney Peltier. Rettinger contends that Agent Bennett tried to lead the statements of these two witnesses and put words in their mouth. Specifically, Rettinger contends that Denise Hanson "denies ever saying that Rettinger was infatuated with [the victim] or that Rettinger had a crush on [the victim]." See Docket No. 39-1. During a taped and transcribed conversation between the defendant's attorney and Denise Hanson, Hanson said, "[h]e could have a crush on her. He could have been infatuated with her, but I don't remember...." See Docket No. 39-2. When asked if she clarified that with Agent Bennett, Hanson said, "I don't know if I clarified it or not...." See Docket No. 39-2. Rettinger also expects Audrey Brown, a former employee of Rodney Peltier, to testify that Agent Bennett attempted to get Peltier to make a statement to the effect that he had seen Rettinger's car in the victim's neighborhood. See Docket No. 39-1. Agent Bennett denies attempting to influence anyone to say anything that was not true. See Docket No. 48. Agent

Bennett reported talking to Rodney Peltier, and that Peltier indicated he had not seen the defendant's car in the victim's neighborhood.  See Docket No. 48.

Finally, during the course of discovery the defendant's attorney attempted to interview BIA Agent Wayne Thomas regarding what Agent Thomas had previously told the defendant about his ability to go to the casino.  See Docket No. 45.  Agent Thomas declined the interview and informed the defendant's attorney that those questions had to be directed to the United States Attorney's Office.  See Docket No. 45.  The Government believes that Agent Thomas will be available to testify at trial.  See Docket No. 47.

## II.   LEGAL DISCUSSION

### A.   MOTION TO DISMISS FOR FAILURE TO PROVIDE EXCULPATORY EVIDENCE

Rettinger requests that the indictment be dismissed and claims that the Government violated his due process rights as defined in Brady v. Maryland, 373 U.S. 83 (1963).  Rettinger asserts that, under Brady, the Government violated his due process rights by failing to disclose evidence obtained from a witness and failing to interview a second witness (Steven Sedler).  The Eighth Circuit has held that no Brady violation occurs when exculpatory evidence is disclosed on the eve of trial or during the trial.  United States v. Sandoval-Rodriguez, 452 F.3d 984, 990 (8th Cir. 2006); United States v. Holmes, 431 F.3d 683, 687 (8th Cir. 2005).  It is clear that late disclosure of exculpatory evidence does not violate Brady nor does late disclosure violate the defendant's due process rights unless the defendant cannot make use of the exculpatory material.  United States v. Sandoval-Rodriguez, 452 F.3d 984, 990 (8th Cir. 2006).

In this case, there has been no late disclosure by the Government. Rettinger received the interview report of Louann St. Claire in mid-October 2006, while discovery was still ongoing. The trial is not scheduled until December 11, 2006. Although Rettinger complained of the Government's failure to provide the interview report, Rettinger attached an affidavit from St. Claire that clearly reveals that Rettinger was in possession of the evidence when he filed the motion. Further, Rettinger has failed to provide any support for the argument that the Government's failure to interview a witness (Steven Sedler) alleged to have exculpatory evidence results in a due process violation and is grounds for dismissal. The memorandum submitted by Rettinger includes a lengthy, taped telephone interview of Steven Sedler. Rettinger will be allowed to call Sedler as a witness at trial to present all of the testimony considered to be exculpatory. No prejudice has occurred because Rettinger has the potentially exculpatory evidence in his possession. The failure of the Government to interview Sedler does not constitute a Brady violation.

**B.     MOTION TO DISMISS FOR LOSS OR DESTRUCTION OF EVIDENCE**

Rettinger contends that the casino camera surveillance recordings were exculpatory and argues that the Government's failure to preserve the recordings violated his due process rights. It is well-established that a due process violation for the failure of law enforcement officers to preserve potentially exculpatory evidence requires a showing of bad faith on the part of the police. Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Iron Eyes, 367 F.3d 781, 786-87 (8th Cir. 2004).

In Iron Eyes, the defendant was convicted of possession of stolen firearms after he was arrested outside a home which had been burglarized and he was found to be in possession of the

home owner's firearms. United States v. Iron Eyes, 367 F.3d 781, 783 (8th Cir. 2004). The day after the defendant's arrest, the homeowner called the police and informed them that his bed had been urinated on and asked the police if they wanted the urine-soaked items for evidence. Id. at 786. The police declined and said the owner should dispose of the items. The defendant claimed that by allowing the owner to dispose of the mattress and bedding, the police had allowed potentially exculpatory evidence to be destroyed, thereby violating his due process rights. The Eighth Circuit found no due process violation and held that, at worst, there was negligence on the part of the police for not preserving potentially exculpatory evidence but there was no evidence of bad faith.

Rettinger also contends that his due process rights were violated because, under Brady v. Maryland, 373 U.S. 83, 87 (1963), a defendant has the constitutional right to access material evidence favorable to the accused, including evidence to be used for impeachment, and the suppression of that evidence is a due process violation "irrespective of the good faith or bad faith of the prosecution." In this case, unlike Brady, the prosecution did not withhold material evidence that was within its possession. Rather, the surveillance videos were not obtained by the Government due to miscommunications with the casino. The Court finds that any reliance on Brady is misplaced and that Arizona v. Youngblood controls the issue before the Court. In other words, there must be a showing of bad faith on the part of the law enforcement officers involved in order to support a finding of a due process violation.

The Government does not dispute the fact that there are no surveillance recordings available for May 11-17, 2006. See Docket No. 37. The investigating agents attempted to obtain the casino surveillance recordings, but did not collect them because they were led to believe that none were available. The agents' actions do not even rise to the level of those actions found to be

constitutional in Iron Eyes where the officers were made aware of potential evidence, but allowed the victim to destroy the items. United States v. Iron Eyes, 367 F.3d 781, 786-87 (8th Cir. 2004). The agents' actions may arguably amount to negligence but clearly do not rise to the level of bad faith necessary to establish a due process violation. The Court finds that Rettinger's due process rights have not been violated by the failure to obtain and preserve casino surveillance recordings from May 11-17, 2006.

Rettinger also contends that the agents' failure to preserve the evidence impairs his Sixth Amendment right to confrontation. In Arizona v. Youngblood, the United States Supreme Court reasoned that the suppression of evidence by the prosecution is "'what might loosely be called the area of constitutionally guaranteed access to evidence.'" Arizona v. Youngblood, 488 U.S. 51, 55 (1988) (quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982)). The Supreme Court has not recognized a lack of access to evidence as a confrontation clause violation, and Rettinger has not indicated how the absence of the casino surveillance recordings impairs his ability to cross-examine witnesses. Further, the information that may be obtained from the casino surveillance tapes is speculative at best at this stage. The Court finds that the failure of the agents to obtain and preserve the casino surveillance recordings does not create a confrontation clause violation.

Rettinger further contends that law enforcement officials removed a card from his impounded car and that the card was from the victim's aunt and constitutes exculpatory evidence. Even if there was a loss of such evidence as Rettinger contends, the Eighth Circuit has held that there is no due process violation for loss of evidence if the defendant has the ability to present comparable exculpatory evidence. United States v. Purkey, 428 F.3d 738, 748 (8th Cir. 2005); United States v. Chandler, 66 F.3d 1460, 1468 (8th Cir. 1995).

Rettinger has several alternatives available to present comparable exculpatory evidence at trial. Rettinger attached a photocopy of the missing card in support of his motion and he may present that photocopy as an exhibit at trial. Rule 1004(1) of the Federal Rules of Evidence provides that an original writing is not required if the original has been lost or destroyed. In such situations, photocopies may be used. United States v. Gerhart, 538 F.2d 807 (8th Cir. 1976). Thus, the potentially exculpatory evidence (the card) may be introduced at trial if the proper foundation is laid for its admission, namely that the original has been lost or destroyed. Rettinger may also call the victim's aunt as a witness, who can testify to the contents of the card. In addition, the defendant may testify at trial as to the contents of the card. The Court finds that the loss of the card does not in any manner violate Rettinger's due process rights because he has several reasonable alternatives available to present comparable exculpatory evidence at trial.

### C. MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT CONDUCT

Rettinger also argues that the conduct of the FBI agent while interviewing two witnesses was so outrageous that it violated his due process rights under the Fifth Amendment. It is well-established that the level of outrageous conduct necessary to prove a due process violation is high and must shock the conscience of the court. United States v. Russell, 411 U.S. 423, 431-432 (1973). The argument that the Government engaged in outrageous conduct is typically raised in place of an entrapment defense. The defense is generally reserved only for "the most intolerable government conduct." United States v. Musslyn, 865 F.2d 945, 947 (8th Cir. 1989).

Rettinger contends that witness Denise Hanson "denies ever saying that Rettinger was infatuated with [the victim] or that Rettinger had a crush on [the victim]" and that the FBI agent was

trying to lead her statements and slant the interview. See Docket No. 39-1. Rettinger further alleges that witness Audrey Brown will testify that her former boss, Rodney Peltier, told her that during an interview that Peltier had with an FBI agent, the agent tried to persuade Peltier to provide a false statement. The Court has carefully reviewed the record, the facts as alleged by the parties, and the relevant case law, and finds that the alleged conduct of the FBI agent does not rise to the level of the outrageous-type of conduct sufficient to support a violation of the defendant's due process rights.

### D.       MOTION FOR A BILL OF PARTICULARS

"A bill of particulars serves to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite." United States v. Hernandez, 299 F.3d 984, 989-90 (8th Cir. 2002). The Court, in its discretion, may direct the Government to file a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. See Fed. R. Civ. P. 7(f). "To establish reversible error from the denial of a motion for a bill of particulars, a defendant must show that he was actually surprised at trial and suffered prejudice from the denial." United States v. Hernandez, 299 F.3d 984, 989-90. The granting or denial of a bill of particulars lies within the broad discretion of the trial court. United States v. Hernandez, 299 F.3d 984, 989-90 (8th Cir. 2002); United States v. Maull, 806 F.2d 1340, 1345 (8th Cir. 1986); United States v. Arenal, 768 F.2d 263, 268 (8th Cir. 1985); United States v. Gray, 464 F.2d 632, 635 (8th Cir. 1972). A bill

of particulars may not be used as a discovery tool or to obtain detailed disclosure of the Government's evidence and theories. United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993).

In his motion, Rettinger complains that the indictment does not inform him with any specificity as to what conduct is alleged to have occurred, what specific facts the allegation is based upon, and when the alleged offenses occurred. "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993) (citing United States v. Young, 618 F.2d 1281, 1286 (8th Cir. 1980)).

Even if the indictment is insufficient, the availability of information as to the specific conduct and facts of the charge from other sources, such as hearings and the "open-file" policy of the U.S. Attorney's Office, eliminates the need for a bill of particulars. See United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993) (stating that there was no need for a bill of particulars where, despite a question as to the conduct complained of in the indictment, the defendant learned of the facts alleged by the government during an evidentiary hearing); United States v. Canino, 949 F.2d 928, 949 (7th Cir. 1991) (the nature and operations of the "open-file" policy is an adequate form of information retrieval making a bill of particulars unnecessary).

Rettinger has received investigative reports pursuant to the Government's open-file policy. Rettinger attended a detention hearing after his arrest which provided him with additional information as to the specific conduct which provides a basis for the charge against him. The Government has volunteered additional information as to the specific facts and conduct of the defendant that will be presented as evidence at trial. In its discretion, the Court finds that the

indictment is legally sufficient and fairly informs the defendant of the criminal charge against him. Even if the indictment was not deemed to be legally sufficient, the Court finds that the Government's open-file policy, the detention hearing, and the additional information provided by the Government, when coupled with the indictment, is sufficient to fairly inform the defendant of the facts and conduct alleged against him.

As a general rule, the accused is not entitled to a bill of particulars which provides the exact date of the commission of the alleged crimes where time is not an essential element of the crime. See United States v. Nunez, 668 F.2d 10, 11-12 (1st Cir. 1981); United States v. Austin, 448 F.2d 399, 401 (9th Cir. 1971) ("generally, exact dates are not required so long as they are within the statute of limitation ... and no prejudice is shown"). There is no dispute that Rettinger has been provided with the approximate time frame of the alleged offense. The indictment alleges a time frame starting in January 2006. The discovery reveals, and the Government specifically points out, that most of the conduct complained of occurred in April and May of 2006. The Government has expressly stated that Rettinger has been provided with all of the discovery materials generated in this case to date. To require the Government to provide a bill of particulars would serve no legitimate purpose as Rettinger should be able to glean from the discovery materials any existing relevant information concerning the date(s) involved in the alleged offense. The Court finds that the indictment is legally sufficient and fairly informs the defendant of the charge against him and the corresponding time frame. A bill of particulars is neither warranted nor appropriate under the circumstances.

### E.      MOTION TO TAKE DEPOSITION OF WAYNE THOMAS

Rule 15(a) of the Federal Rules of Criminal Procedure governs the taking of depositions in federal criminal cases. Rule 15(a) states in part: "A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice...." The stated objective of Rule 15(a) is the preservation of evidence for use at trial. United States v. Hutchings, 751 F.2d 230, 236 (8th Cir.1984). Rettinger requests that he be allowed to take the deposition of BIA Special Agent Wayne Thomas so that he may determine if a mistake of law defense applies and to assist in the potential settlement of this matter prior to trial. (Docket No. 45). However, the purpose of the rule is not to provide a method of pre-trial discovery.

The decision to grant or deny a motion to take a deposition rests within the sound discretion of the trial court. United States v. Adcock, 558 F.2d 397, 406 (8th Cir.1977). In Adcock, the Eighth Circuit Court of Appeals affirmed the district court's denial of taking depositions of nineteen government witnesses because the defendant sought to depose individuals as a method of pre-trial discovery. See In re Associated Press v. Ladd, 162 F.3d 503, 511 (7th Cir.1998) (indicating the Seventh Circuit Court of Appeals found "exceptional circumstances" to depose the governor when a juror's illness delayed the trial and the governor was unavailable to testify when the trial resumed); and United States v. Ruiz-Castro, 92 F.3d 1519, 1533 (10th Cir.1996) (indicating the Tenth Circuit Court of Appeals upheld the district court's ruling that "exceptional circumstances" did not exist because the defendant failed to prove that the witnesses would not be available to testify at trial). The burden is on the moving party to prove the necessity for preserving the prospective witnesses' testimony by a deposition. United States v. Adcock, 558 F.2d 397, 406 (8th Cir. 1977).

The Government has indicated that Special Agent Thomas will be available at trial. The Court finds that the Defendant has not established the need to preserve the testimony of the agent/witness by deposition, nor do exceptional circumstances exist in this case to justify the need to take a deposition of Special Agent Thomas.

### III.  CONCLUSION

For the reasons set forth above, the Defendant's Motion to Dismiss for Failure to Provide Exculpatory Evidence (Docket No. 28), Motion to Dismiss for Loss or Destruction of Evidence (Docket No. 31), Motion to Dismiss for Outrageous Government Conduct (Docket No. 38), Motion for a Bill of Particulars (Docket No. 41), and Motion to Take Deposition of Wayne Thomas (Docket No. 43) are **DENIED**. Accordingly, the Defendant's Motion for Hearing on Motions (Docket No. 32) and Motion for Hearing on Motion to Dismiss for Outrageous Government Conduct (Docket No. 40) are **DENIED** as moot.

**IT IS SO ORDERED.**

Dated this 1st day of November, 2006.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court